**SEALED**

**ORIGINAL**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2014 MAY -6  PM 4: 22

DEPUTY CLERK_____ NT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

CARWIN SHAW (1)
AMANDA JOHNSON (2)
APRIL HARVEY (3)
LANUSHA LEMMONS (4)

**FILED UNDER SEAL**

CRIMINAL NO.

**3 - 14 CR - 175 - D**

INDICTMENT

The Grand Jury Charges:

INTRODUCTION

At all times material to this indictment:

1.     The Social Security Administration (hereinafter "SSA") was an independent agency of the executive branch of the United States.  The SSA was responsible for administering programs under the Social Security Act, codified at Title 42, United States Code, Section 301, et. seq.  These programs included the Social Security Old-Age, Survivors, and Disability Insurance program under Title II of the Act (hereinafter "Title II Program") and the Supplemental Security Income program for the Aged, Blind, and Disabled under Title XVI of the Social Security Act (hereinafter "SSI Program").

2.      The Title II Program included the Retirement Insurance Benefits Program, which paid monthly cash benefits to individuals who had worked and paid taxes into the Social Security Trust Fund.  To be eligible for the Title II Program, individuals must meet either age or disability requirements and be "insured" under the Act by virtue of their contributions to the Social Security Trust Fund.

3.      The SSI Program paid monthly cash benefits to individuals who the SSA had found to be medically disabled, and who the SSA also found to be eligible for the SSI program on the basis of financial need, as determined in relation to both "income" and "resources" (as those terms are defined for purposes of the Act).  While eligibility for the SSI program depended on the severity of the applicant's disability, the amount of the benefit depended on, among other considerations, how much income the beneficiary's household received.

4.      Eligibility for the SSI program was conditioned on the beneficiary providing complete and accurate information to SSA regarding income and living arrangements, both at the time of application and on an ongoing basis.  SSA's electronic databases also received wage and income information from other agencies of the executive branch, such as the Internal Revenue Service.

5.     When SSA received information about wages or earnings from agencies with which SSA had a data-sharing agreement, including, but not limited to the Internal Revenue Service and the Texas Workforce Commission, SSA considered that reported income as "verified."  Verified income was used both to determine the amount of SSI that should have been paid in the past and the amount of SSI that SSA should pay in the future.

6.     SSA's electronic databases also sent data to and received data from the United States Treasury Department.  Relevant to this indictment, the Treasury Department is responsible for issuing Treasury payments to all benefits recipients, either by paper check or direct deposit.

7.     If a benefits recipient did not receive their paper Treasury check, they notified SSA.  SSA policy typically directed employees to request that the Treasury Department issue a replacement check only after verifying whether the first check was processed and cashed.  This was especially true when it appeared that the beneficiary frequently reported their check as missing or stolen.

8.     However, SSA employees had the authority to request a replacement check prior to verifying the payment was processed or cashed.  As a safeguard, if multiple replacement checks had been issued in the previous twenty-four months, SSA's policies and systems required two employees to approve the replacement check: the first employee made the request for a replacement check; and the second employee confirmed that the replacement check should be issued prior to verifying whether the first check was processed or cashed.

9.    When SSA requested that the Treasury Department issue a replacement check, and the beneficiary ultimately cashed both checks, SSA posted the amount of the replacement check as an overpayment on the beneficiary's record. The beneficiary was then required to repay the duplicate funds. This overpayment could be waived, but only if the beneficiary was found to be without fault and unable to repay. Relevant to this indictment, an SSA employee could administratively waive these overpayments without a second employee's approval, provided that the administrative waiver was less than $1,000.

10.    A representative payee was an individual approved by SSA to manage a beneficiary's funds to ensure that their needs are met. Representative payees were typically named to receive benefits on behalf of a beneficiary who were incompetent, either by age or disability.

11.    Defendant **Carwin Shaw** was a Service Representative employed by SSA in the Mid-Cities Field Office, located in Grand Prairie, Texas. As a Service Representative, Defendant **Shaw's** primary job function was to initially encounter and interview members of the public to determine what services they needed. Service Representatives are located in each of the SSA field offices and have face-to-face contact with the public.

12.    As part of his duties as an SSA employee, Defendant **Shaw** was granted access to SSA's electronic databases using a unique employee personal identification number (pin). Defendant **Shaw's** access to SSA's electronic databases authorized him to request replacement checks for beneficiaries from the Treasury Department, provided the replacement checks were for legitimate SSA business.

13.    It was not part of Defendant **Shaw's** regular duties to alter or correct verified income or wages in SSA's systems. Rather, those duties were performed by a Claims Representative, an SSA employee who obtained, clarified, and verified information that would later be used to analyze claims and make decisions regarding entitlement to benefits.

14.    Co-conspirator #1 was the representative payee for an incompetent Title II beneficiary. She resided in Dallas, Texas.

15.    Co-conspirator #2 was the representative payee for one minor SSI beneficiary. She resided in Arlington, Texas.

16.    Co-conspirator #3 was the representative payee for one minor SSI beneficiary. She resided in Cedar Hill, Texas.

17.    Co-conspirator #4 was the representative payee for one minor SSI beneficiary. Co-Conspirator #4 resided in Fort Worth, Texas.

18.    Defendant **Amanda Johnson** was the representative payee for one minor SSI beneficiary. Defendant **Johnson** resided in Arlington, Texas.

19.    Defendant **April Harvey** was the representative payee for one minor SSI beneficiary. Defendant **Harvey** resided in Arlington, Texas.

20.    Defendant **Lanusha Lemmons** was the representative payee for one minor SSI beneficiary. Defendant **Lemmons** resided in Arlington, Texas.

## Count One
### Conspiracy to Commit a Theft of Government Funds
(Violation of 18 U.S.C. § 371 (18 U.S.C. § 641))

21.    Beginning on or about October 2011 and continuing until on or about January 2014, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Carwin Shaw, Amanda Johnson, April Harvey**, and **Lanusha Lemmons**, and other unnamed co-conspirators did intentionally and willfully combine, conspire, confederate, and agree together and with each other to knowingly and with the intent to deprive the owner of the use and benefit of the money, embezzle, steal, and convert to their use or the use of another money belonging to the Social Security Administration, a department or agency of the United States; namely, unauthorized and duplicate payments of Social Security benefits, to which they knew they were not entitled, having a value of over $1,000.00, in violation of 18 U.S.C. § 641.

It was part of the conspiracy that:

22.    Defendant **Shaw** accessed the Social Security record for several of the beneficiaries referenced in this indictment and altered or deleted verified income from SSA's databases.  By doing so, Defendant **Shaw** increased the amount of monthly SSI benefits payable to each beneficiary, generated lump-sum back payments to those beneficiaries, and increased the monthly projected payment for those beneficiaries.

23.    For each of the beneficiaries in this case, Defendant **Shaw** also requested replacement checks from the Treasury Department to be paid to their representative payees.  In cases where a second employee pin was required to authorize the replacement check, Defendant **Shaw** requested that other employees known and unknown to the grand jury use their own unique employee pin to release the check.  Those employees known and unknown to the grand jury, including those who were personal friends of Defendant **Shaw,** did not conduct the appropriate investigation into the beneficiary's payment history before authorizing the replacement check.

24.    Defendants **Johnson, Harvey,** and **Lemmons** and other unindicted co-conspirators would receive both Treasury checks and cash each one, knowing they had no right to multiple monthly benefits checks.

25.    After cashing the replacement check, one or more of the co-conspirators met Defendant **Shaw** in a public location and provided him with up to $350 as a "fee" for generating the second check.

26.    After both checks were cashed and SSA issued a notice requiring the representative payees to repay the funds from the duplicate check, Defendant **Shaw** typically accessed SSA's electronic systems and administratively waived the overpayment.

## OVERT ACTS

27.    In furtherance of the conspiracy, and to effect the objects thereof, the defendants and co-conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Texas, and elsewhere:

### Defendant Shaw and Co-Conspirator #1

28.    In or about August 2013, Defendant **Shaw** and Co-conspirator #1 met at the SSA office in Grand Prairie, Texas, where Defendant **Shaw** assisted her with allegedly legitimate agency business.  At or around that time, Defendant **Shaw** and Co-conspirator #1 agreed to defraud the SSA.

30.    In or about August 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-Conspirator #1 for the incompetent beneficiary for whom she acted as the representative payee.

31.    On or after August 1, 2013, Co-conspirator #1 cashed both Treasury checks and gave Defendant **Shaw** $350 from the replacement check.

32.    In or about November 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-Conspirator #1 for the incompetent beneficiary for whom she acted as the representative payee.

33.    On or after November 1, 2013, Co-Conspirator #1 cashed both Treasury checks and gave Defendant **Shaw** $350 from the replacement check.

34.    On or about January 6, 2014, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the November 2013 replacement check

35.     In or about December 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #1 for the incompetent beneficiary for whom she acted as the representative payee.

36.     On or after December 1, 2013, Co-conspirator #1 cashed both Treasury checks and gave Defendant **Shaw** $350 from the replacement check.

### Defendant Shaw and Co-Conspirator #2

37.     On or before January 1, 2013, Defendant **Shaw** and Co-conspirator #2 met at the SSA Office in Grand Prairie, Texas, where Defendant **Shaw** assisted her with allegedly legitimate SSA business.  At or around that time, Defendant **Shaw** and Co-conspirator #2 agreed to defraud the SSA.

38.     On or about January 2, 2013, Defendant **Shaw** accessed SSA's electronic records for Co-conspirator #2 and her minor SSI beneficiary and altered verified income amounts dating back to 2011.  As a result, SSA issued a $575.52 check to Co-conspirator #2 to compensate for the decrease in her income and wages.

39.     On or about January 14, 2013, Defendant **Shaw** again accessed SSA's electronic records for Co-conspirator #2 and her minor SSI beneficiary and further altered verified income amounts dating back to 2011.

40.     In or about April 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

41.     On or after April 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

42.     On or about May 29, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the April 2013 replacement check.

43.    In or about May 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

44.    On or after May 1, 2013, Co-Conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

45.    In or about June 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

46.    On or after June 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

47.    On or about July 29, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the June 2013 replacement check.

48.    In or about July 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

49.    On or after July 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

50.    On or about August 28, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the July 2013 replacement check.

51.    In or about September 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

52.    On or after September 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

53.    On or about October 31, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the September 2013 replacement check.

54.    In or about October 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

55.     On or after October 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

56.     On or about December 4, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the October 2013 replacement check.

57.     In or about November 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

58.     On or after November 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.  This overpayment was not waived.

59.     In or about December 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #2 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

60.     On or after December 1, 2013, Co-conspirator #2 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.  This overpayment was not waived.

## Defendant Shaw and Co-conspirator #3

61.    On or before December 2012, Defendant **Shaw** and Co-conspirator #3 met through means unrelated to SSA and developed a sexual relationship. At or after that time, Defendant **Shaw** and Co-conspirator #3 agreed to defraud the SSA.

62.    Between December 2012 and January 2013, Defendant **Shaw** accessed SSA's electronic records for Co-conspirator #3 and her minor beneficiary and altered verified income amounts dating back to 2010.

63.    As a result of these changes, SSA issued Co-conspirator #3 at least five back payments to compensate for allegedly lower earnings, totaling $10,095.75. Co-conspirator #3 split these funds with Defendant **Shaw.**

64.    In or about December 2012, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee.

65.    On or after December 1, 2012, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check. SSA did not require Co-conspirator #3 to repay the check, as Defendant **Shaw's** changes to the beneficiary's record indicated that beneficiary had been previously underpaid.

66.    In or about January 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked an employee unknown to the grand jury to approve this request.

67.    On or after January 1, 2013, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

68.    On or about April 23, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the January 2013 replacement check.

69.    In or about February 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

70.    On or after February 1, 2013, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

71.    On or about March 29, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the February 2013 replacement check.

72.    In or about March 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked an employee unknown to the grand jury to approve this request.

73.    On or after March 1, 2013, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

74.    On or about April 23, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the March 2013 replacement check.

75.    In or about June 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

76.    On or after June 1, 2013, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

77.    On or about July 24, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the June 2013 replacement check.

78.    In or about August 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

79.    On or after August 1, 2013, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

80.    On or about September 26, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the August 2013 replacement check.

81.    In or about September 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #3 for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

82.    On or after September 1, 2013, Co-conspirator #3 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.

83.    On or about October 31, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the September 2013 replacement check.

### Defendants Shaw and Co-conspirator #4

84.     On or before December 12, 2012, Defendant **Shaw** and Co-conspirator #4 met at the SSA Office in Grand Prairie, Texas, where Defendant **Shaw** assisted her with allegedly legitimate SSA business. At or around that time, Defendant **Shaw** and Co-conspirator #4 agreed to defraud the SSA.

85.     Between December 2012 and January 2013, Defendant **Shaw** accessed SSA's electronic records for Co-conspirator #4 and her minor beneficiary and altered verified income amounts dating back to 2008. As a result of Defendant **Shaw's** changes, SSA sent two checks totaling $6,850.50 because it believed the minor SSI beneficiary had been previously underpaid.

86.     In or about December 2012, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #4 for the minor SSI beneficiary for which she acted as representative payee.

87.     On or after December 1, 2012, Co-conspirator #4 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check. SSA did not post an overpayment due to the significant number of changes Defendant **Shaw** made to the record.

88.     In or about January 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #4 for the minor SSI beneficiary for whom she acted as representative payee.

89.     On or after January 1, 2013, Co-conspirator #4 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.  SSA did not post an overpayment due to the significant number of changes Defendant **Shaw** made to the record.

90.     In or about February 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #4 for the minor SSI beneficiary for which she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

91.     On or after February 1, 2013, Co-conspirator #4 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.  SSA did not post an overpayment due to the significant number of changes Defendant **Shaw** made to the record.

92.     In or about March 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #4 for the minor SSI beneficiary for whom she acted as representative payee.  An employee unknown to the grand jury approved this request.

93.     On or after March 1, 2013, Co-conspirator #4 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check.  SSA did not post an overpayment due to the significant number of changes Defendant **Shaw** made to the record.

94.    In or about May 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Co-conspirator #4 for the minor SSI beneficiary for whom she acted as representative payee. Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

95.    On or after May 1, 2013, Co-conspirator #4 cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments and gave Defendant **Shaw** a portion of the second check. SSA did not post an overpayment due to the significant number of changes Defendant **Shaw** made to the record.

**Defendants Shaw and Johnson**

96.    On or before July 18, 2013, Defendants **Shaw** and **Johnson** met at the SSA Office in Grand Prairie, Texas, where Defendant **Shaw** assisted Defendant **Johnson** with allegedly legitimate SSA business.  At or around that time, Defendants **Shaw** and **Johnson** agreed to defraud the SSA.

97.    Between July 18, 2013 and July 24, 2013, Defendant **Shaw** accessed SSA's electronic system on at least three separate occasions and altered or deleted verified income or wages.

98.    In or about August 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Johnson** for the minor SSI beneficiary for whom she acted as representative payee.  No second pin was required to approve this request.  Although SSA posted overpayments to the record, the exact amount of the overpayment is not currently known due to the changes made by Defendant **Shaw**.

99.    On or after August 1, 2013, Defendant **Johnson** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.

100.    In or about September 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Johnson** for the minor SSI beneficiary for whom she acted as representative payee.  No second pin was required to approve this request.

101.    On or after September 1, 2013, Defendant **Johnson** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.  Although SSA posted overpayments to the record, the exact amount of the overpayment is not currently known due to the changes made by Defendant **Shaw**.

102.    In or about October 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Johnson** for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

103.    On or after October 1, 2013, Defendant **Johnson** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.  Although SSA posted overpayments to the record, the exact amount of the overpayment is not currently known due to the changes made by Defendant **Shaw**.

104.    In or about November 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Johnson** for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

105.    On or after November 1, 2013, Defendant **Johnson** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.  Although SSA posted overpayments to the record, the exact amount of the overpayment is not currently known due to the changes made by Defendant **Shaw**.

**Defendants Shaw and Harvey**

106.    On or before November 1, 2012, Defendants **Shaw** and **Harvey** met at the SSA Office in Grand Prairie, Texas, where Defendant **Shaw** assisted Defendant **Harvey** with allegedly legitimate SSA business.  At or around that time, Defendants **Shaw** and **Harvey** agreed to defraud the SSA.

107.    On or about November 1, 2012, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Harvey** for the minor SSI beneficiary for which she acted as representative payee.  No second pin was required to approve this request.

108.    On or after November 1, 2012, Defendant **Harvey** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.

109.    On or about December 1, 2012, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Harvey** for the minor SSI beneficiary for which she acted as representative payee.  No second pin was required to approve this request.

110.    On or after December 1, 2012, Defendant **Harvey** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.

### Defendants Shaw and Lemmons

111.    In or before February 2013, Defendants **Shaw** and **Lemmons** met at the SSA Office in Grand Prairie, Texas, where Defendant **Shaw** assisted Defendant **Lemmons** with allegedly legitimate SSA business.  At or around that time, Defendants **Shaw** and **Lemmons** agreed to defraud the SSA.

112.    In or about February 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Lemmons** for the minor SSI beneficiary for whom she acted as representative payee.  No second employee was required to approve this request.

113.    On or after February 1, 2013, Defendant **Lemmons** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.

114.    On or about April 2, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the February 2013 replacement check.

115.    In or about March 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Lemmons** for the minor SSI beneficiary for whom she acted as representative payee.  No second employee was required to approve this request.

116.    On or after March 1, 2013, Defendant **Lemmons** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.  The overpayment was not waived.

117.    In or about June 2013, Defendant **Shaw** requested that the Treasury Department issue an unauthorized replacement check to Defendant **Lemmons** for the minor SSI beneficiary for whom she acted as representative payee.  Defendant **Shaw** asked another SSA employee, who was Defendant **Shaw's** personal friend, to approve this request.

118.    On or after June 1, 2013, Defendant **Lemmons** cashed both checks for the minor SSI beneficiary knowing she was not entitled to two payments.

119.    On or about August 30, 2013, Defendant **Shaw** accessed SSA's electronic records and administratively waived the overpayment for the June 2013 replacement check.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 641).

<u>Count Two</u>
Theft of Government Funds and Aiding and Abetting
(Violation of 18 U.S.C. §§ 641 and 2)

From on or about July 2013 through on or about November 2013, in the Fort Worth Division of the Northern District of Texas, the defendant, **Amanda Johnson**, aided and abetted by **Carwin Shaw**, did, knowingly and with the intent to deprive the owner of the use and benefit of the money, embezzle, steal, and convert to her use or the use of another money belonging to the Social Security Administration, a department or agency of the United States; namely, unauthorized and duplicate payments of Supplemental Security Income benefits, to which she knew she was not entitled, having a value of over $1,000.00.

In violation of 18 U.S.C. §§ 641 and 2.

<u>Count Three</u>
Theft of Government Funds and Aiding and Abetting
(Violation of 18 U.S.C. §§ 641 and 2)

From on or about November 2012 through on or about January 2013, in the Fort

Worth Division of the Northern District of Texas, the defendant, **April Harvey**, aided

and abetted by **Carwin Shaw**, did, knowingly and with the intent to deprive the owner of

the use and benefit of the money, embezzle, steal, and convert to her use or the use of

another money belonging to the Social Security Administration, a department or agency

of the United States; namely, unauthorized and duplicate payments of Supplemental

Security Income benefits, to which she knew she was not entitled, having a value of over

$1,000.00.

In violation of 18 U.S.C. §§ 641 and 2.

<u>Count Four</u>
Theft of Government Funds and Aiding and Abetting
(Violation of 18 U.S.C. §§ 641 and 2)

From on or about February 2013 through on or about June 2013, in the Fort Worth

Division of the Northern District of Texas, the defendant, **Lanusha Lemmons**, aided and

abetted by **Carwin Shaw**, did, knowingly and with the intent to deprive the owner of the

use and benefit of the money, embezzle, steal, and convert to her use or the use of another

money belonging to the Social Security Administration, a department or agency of the

United States; namely, unauthorized and duplicate payments of Supplemental Security

Income benefits, to which she knew she was not entitled, having a value of over

$1,000.00.

In violation of 18 U.S.C. §§ 641 and 2.

A TRUE BILL

_____
FOREPERSON

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

_____
NICOLE DANA
Special Assistant United States Attorney
Texas State Bar No. 24062268
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Telephone: 214-659-8694
Facsimile: 214-659-8805
Email: nicole.dana@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

CARWIN SHAW (1)
AMANDA JOHNSON (2)
APRIL HARVEY (3)
LANUSHA LEMMONS (4)

SEALED INDICTMENT

18 U.S.C. § 371 (18 U.S.C. § 641)
Conspiracy to Commit a Theft of Government Funds

18 U.S.C. §§ 641 and 2
Theft of Government Funds and Aiding and Abetting

4 Counts

A true bill rendered

DALLAS                                                    FOREPERSON

Filed in open court this _6_ day of May, 2014

                                                              Clerk

**WARRANTS TO ISSUE**

UNITED STATES DISTRICT/MAGISTRATE JUDGE
No Magistrate Case Pending